**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

SHELL TRADEMARK MANAGEMENT B.V. and PENNZOIL-QUAKER STATE COMPANY

Plaintiffs and Counter-Defendants,

v.

THE INDIVIDUALS AND BUSINESS ENTITIES IDENTIFIED ON SCHEDULE A,

Defendants and Counter-Plaintiffs.

-----------------------------------------------------------X

THE OIL AND LUBRICANT DEPOT LLC,

Third-Party Plaintiff,

v.

JOHN DOES 1-10 and POLSINELLO FUELS, INC.,

Third-Party Defendants.

-----------------------------------------------------------X

**OPINION AND ORDER**

23-cv-7653 (SJB) (LGD)

**LEE G. DUNST**, Magistrate Judge:

Plaintiffs Shell Trademark Management B.V. and Pennzoil-Quaker State Company (collectively, "Shell" or "Plaintiffs") bring claims against various Defendants, including The Oil and Lubricant Depot LLC ("Oil Depot"), for the alleged sale of counterfeit "Shell-branded" oil. *See generally* Electronic Case Filing ("ECF") No. 107 (Amended Complaint). Presently before the Court is Oil Depot's Pre-Motion Letter for Contempt.[1] *See* ECF No. 206 (the "Motion").

[1] The undersigned construes Oil Depot's Pre-Motion Letter as the Contempt Motion itself and issues this Opinion and Order based on the present record. *See In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (finding that the district court acted within its discretion when construing pre-motion letters as the motion itself); *see* Aug. 17, 2026 Order (same).

On August 2, 2026, District Judge Sanket J. Bulsara referred the contemplated contempt motion (which had not yet been filed) to the undersigned for a Report and Recommendation "or decision as appropriate." *See* Aug, 2, 2026 Order. For the reasons below, the undersigned finds that Oil Depot has failed to meet its burden to warrant a finding of contempt, declines to certify facts to Judge Bulsara for a determination of contempt, and recommends that Oil Depot's Motion be denied.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The undersigned assumes familiarity with the factual and procedural background detailed in the undersigned's prior Report and Recommendation to deny Oil Depot's earlier motion for sanctions. *Shell Trademark Mgmt. B.V. v. Individuals & Bus. Entities Identified on Schedule A*, No. 23-CV-7653, 2026 WL 2035131, at *1-2 (E.D.N.Y. July 14, 2026). Notably, Oil Depot did not object to the recommended denial of its sanctions motion, and Judge Bulsara adopted that Report and Recommendation in its entirety. *See* Aug. 13, 2026 Order. Only those facts relevant to the instant Motion are discussed.

### A. The *Ex Parte* Temporary Restraining Order and Standstill Agreements

Shell filed this lawsuit on October 13, 2023, alleging ten claims related to trademark infringement and counterfeiting, false designation of origin, unfair competition, deceptive trade

[2] In addressing the issues in the Motion before it, "[t]he undersigned issues this Opinion and Order, rather Report and Recommendation, because although on a motion for civil contempt the magistrate judge certifies the facts to the district judge and does not issue an order of contempt, [. . .] here, the undersigned finds that Plaintiff has failed to adduce sufficient evidence to establish a *prima facie* case of contempt and therefore declines to certify any facts to the district judge for further contempt proceedings. *See In re Amon,* 347 F.R.D. 17, 20 (S.D.N.Y. 2024) (on a motion for civil contempt, magistrate judge issued opinion and order declining to certify the facts to the district judge for a determination on contempt where petitioner failed to adduce sufficient evidence to establish a *prima facie* case of contempt against respondent); [(further citations omitted)]." *Dimitrov v. United States*, No. 25 CIV. 7420 (JHR) (SLC), 2026 WL 710091 at *7 n.3 (S.D.N.Y. Mar. 13, 2026).

practices, false advertising, and unjust enrichment. *See* ECF No. 1 (Original Complaint); ECF No. 107 (Amended Complaint).[3] That same day, Shell sought an *ex parte* Temporary Restraining Order ("TRO") barring the transfer of assets obtained from Defendants' alleged sale of counterfeit "Shell-branded" oil. *See* ECF No. 4 (application for *ex parte* TRO). District Judge Joan M. Azrack (to whom the case was then assigned) granted Shell's *ex parte* TRO request on October 17, 2023. *See* ECF No. 9. After a hearing before Judge Azrack on November 1, 2023, the *ex parte* TRO was later replaced by a series of standstill agreements that were submitted jointly by the parties and then approved by Judge Azrack from November 2923 through April 2024. *See* ECF No. 26 (Original Standstill Agreement); ECF No. 34 (Amended Standstill Agreement dated December 4, 2024); ECF No. 57 (Amended Standstill Agreement dated March 30, 2024); ECF No. 63 (Addendum to Amended Standstill Agreement dated April 23, 2024) (collectively, the "Standstill Orders" or the "Orders").

As relevant here, the original Standstill Order provides that "Plaintiffs will do nothing to interfere with ongoing purchases from Sam's Club by Defendants of Shell-branded products."[4] ECF No. 26 ¶ 4. The subsequent Standstill Orders reiterate Plaintiffs' same obligation to refrain from interfering with Defendants' purchases from Sam's Club of Shell-branded products. *See* ECF No. 34 ¶ 2; ECF No. 57 ¶ 2. Although this case was reassigned to District Judge Sanket J. Bulsara on January 31, 2025, the latest amended Standstill Order (ECF No. 57) and its addendum (ECF No. 63) remain in effect.

---

[3] The "Amended Complaint adds factual allegations but does not include additional claims." *Shell* I, 2026 WL 2035131, at *1 (citation omitted).

[4] Sam's Club acts as the intermediary supplier between Shell and other "truckload customers" like Oil Depot to purchase Shell-branded products. *See* ECF No. 206 at 6. Moreover, "Sam's Club employs its own sales managers who are directly responsible for communicating with Oil Depot and other truckload customers." *See id.*

**B. The July 2026 Emails**

On July 17, 2026, Plaintiffs' counsel sent an email to Oil Depot's counsel, stating in pertinent part, that:

> At this stage in the litigation, we have determined that all communications between Shell and Oil Depot should go through their respective attorneys. Thus, Shell's sales representatives who support Sam's Club and its customers will no longer call on or communicate with Oil Depot directly.

ECF No. 218-2 at 5. Plaintiffs reiterated that same position in a subsequent email on July 20, 2026, adding that "Shell will continue to receive and fulfill orders received from Oil Depot via Sam's Club, with no changes in terms or shipping, and is planning to make that clear to Sam's Club as well." ECF No. 218-2 at 4. Plaintiffs once again reaffirmed this commitment in another email on July 23, 2026. *See* ECF No. 218-2 at 3 ("Again, Shell is not making any changes to its process of receiving and fulfilling orders received from Oil Depot via Sam's Club, with no changes in terms or shipping other than the pricing and supply issues based solely on the supply and demand of Shell's motor oil at this time.").

Shell represents that it made the decision to terminate direct communication between Shell's sale representatives and Oil Depot for three reasons: (1) major supply disruptions stemming from the conflict in the Middle East, (2) a key staff member in Shell's customer service department has taken maternity leave, creating a personnel shortage, and (3) the pendency of the litigation with Oil Depot. *See* ECF No. 206 at 6; *see also* ECF No. 218-1 ⁋ 7. Defendant contends that "Plaintiffs' July 17[, 2026] directive terminating all direct communication between Shell's sales representatives and Oil Depot [is] in apparent violation of multiple prior Court orders issued in this action." ECF No. 206 at 2.

**C. The Instant Motion**

On July 31, 2026, Defendant directed a letter to Judge Bulsara requesting an expedited

briefing schedule for its forthcoming motion for civil contempt (which had already been served on Shell on July 28, 2026, but not yet filed with the Court). *See* ECF No. 200. On August 2, 2026, Judge Bulsara referred that scheduling request to the undersigned and further directed that "any associated motion, should Judge Dunst permit the filing of such a motion, is referred for a report or recommendation or decision, as appropriate." Aug. 2, 2026 Order. Subsequently, on August 7, 2026, the undersigned rejected the parties' proposed briefing schedule for the contemplated contempt motion and set deadlines for the parties to serve and file their premotion letter and opposition. *See* Aug. 7, 2026 Order. However, on August 10, 2026, Defendant once again requested an expedited briefing schedule and once again informed the Court that it had already served its opening motion on Plaintiffs. *See* ECF No. 203. The Court once again rejected Defendant's request, noted that Oil Depot previously made a "strategic decision" to serve its motion "without the advance approval of a briefing schedule by Judge Bulsara or the undersigned," and directed the parties to comply with the existing schedule. *See* Aug. 17, 2026 Order. Therefore, on August 28, 2026, the parties filed the Motion and Plaintiffs' response. *See* ECF No. 206. On September 11, 2026, the undersigned requested supplemental information from the parties (specifically, additional evidence and further argument on factual and legal issues). *See* ECF No. 209. On September 18, 2026, Defendant filed a supplemental letter (ECF No. 212) and accompanying declarations (ECF Nos. 213-215), and on September 25, 2026, Plaintiffs filed their additional letter and declarations. *See* ECF No. 218.

## II. <u>LEGAL STANDARDS</u>

### A. Magistrate Judges' Contempt Authority

Under the Federal Magistrates Act, 28 U.S.C. § 636(e), "[f]ederal magistrate judges are authorized to exercise contempt authority in certain limited circumstances." *Cricut, Inc. v. APA*

*Tech. Co.*, 698 F. Supp. 3d 538, 542 (E.D.N.Y. 2023) (citation omitted). These instances include summary criminal contempt authority "for misbehavior 'in the magistrate judge's presence so as to obstruct the administration of justice' . . . as well as criminal contempt and civil contempt authority in misdemeanor cases and cases where the magistrate judge presides with the consent of the parties." *Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*, No. 19-CV-4688, 2021 WL 7906554, at *2 (E.D.N.Y. Sept. 17, 2021) (citing 28 U.S.C. §§ 636(e)(2)-(4)); *see also Drayton v. Cnty. of Suffolk*, No.:20-CV-4772, 2023 WL 8790896, at *1 (E.D.N.Y. Dec. 18, 2023) (same). In all other cases (such as the one presented here), magistrate judges must "certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6)(B); *see also Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) ("Under the certification process, the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not issue an order of contempt" (quotation marks and citations omitted)).

Under those circumstances, "[t]he magistrate judge's role in certifying the facts under Section 636(e) is to 'determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'" *Gov't Emps. Ins. Co. v. Boatswain*, No. 21-CV-1702, 2023 WL 2969283, at *1 (E.D.N.Y. Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 4557667 (E.D.N.Y. July 17, 2023) (quoting *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. 2008)). If the magistrate judge grants certification, the district court must decide "whether the conduct constitutes contempt and, if so, what sanctions are appropriate." *Dimitrov,* 2026 WL 710091, at *5 (S.D.N.Y. Mar. 13, 2026) (citation omitted).

**B. Civil Contempt**

Federal courts possess the inherent power to punish contempt. *See Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*, No. 19-CV-4688, 2021 WL 7906554, at *1 (E.D.N.Y. Sept. 17, 2021) (collecting cases); *see also* 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."). "The underlying concern is disobedience to the orders of the judiciary, not merely the disruption of court proceedings." *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. CV 09-cv-2990, 2010 WL 3000685, at *1 (E.D.N.Y. July 28, 2010) (internal quotation marks, citations, and brackets omitted). Contempt is a "severe remedy" and "should not be resorted to when there is fair ground of doubt as to the wrongfulness of the defendant's conduct." *Kosowski v. Nassau Cnty.*, No. CV 24-1669 (NJC)(AYS), 2025 WL 1434730, at *2 (E.D.N.Y. May 19, 2025) (citations omitted).

"To demonstrate contempt, the movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Cricut*, 698 F. Supp. 3d at 543 (quoting *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 128 (2d Cir. 2021)). Courts considering whether to hold a party in civil contempt are not required to find that the party willfully violated a prior court order. *See Bowens*, 546 F. Supp. 2d at 64 n.4 (citing *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d Cir.1989)). "Absent clear and convincing evidence of noncompliance, the harsh remedy of civil contempt is not warranted." *In re Amon*, 347 F.R.D. at 19 (citing *Haua v. Prodigy Network, LLC*, No. 20 Civ. 2318 (PGG) (KNF), 2021 WL 3931877, at *3 (S.D.N.Y. Sept. 2, 2021)).

## III. DISCUSSION

For the foregoing reasons, the Court finds that Oil Depot has failed to meet its heavy burden to demonstrate that contempt is warranted for Shell's "apparent violation" (in Oil Depot's own words) of the Standstill Orders approved by Judge Azrack. *See* ECF No. 206 at 2.

### A. The Order Is Not Clear and Unambiguous

Oil Depot claims that Plaintiffs' July 2026 termination of communications between its sales representatives and Oil Depot constitutes a violation of the Orders. *See* ECF No. 206 at 6. However, in order to be found in contempt, the law requires that a party "must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995) ("A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed'" (citation omitted)). Looking to the four corners of the Orders, they each (ECF Nos. 26, 34, 57, 63) provide the following directive: "Plaintiffs will do nothing to interfere with Defendants' ongoing purchases of Shell-branded products from Sam's Club." *See also* ECF No. 212 at 1.

In seeking contempt, Oil Depot first focuses on the dictionary definition of the word "interfere" as "to enter into or take part in the concerns of others" and "to interpose in a way that hinders or impedes." ECF No. 212 at 1. Based on that, Oil Depot argues, that "[t]he language is unambiguous: it prohibits any action by Shell that interposes itself in a way that disrupts Oil Depot's ongoing purchases from Sam's Club." *See id.* However, relying upon this dictionary definition, there is nothing in the language in the Standstill Orders to support the overly broad scope of what Oil Depot claims is "interference." The four corners of the Orders do not address (1) whether Shell must keep any sales representative in contact with Oil Depot, (2) whether Shell may decline to provide advice to Oil Depot on forecasting, pricing, or promotions, or (3) whether

Shell may withdraw the provision of general services to Oil Depot. *See* ECF No. 218 at 1. In fact, Shell's July 17, 2026 email only addresses Shell's own relationship with Oil Depot, and not Oil Depot's relationship with Sam's Club. *See id*. Thus, whether declining to continue the relationship between Shell and Oil Depot (as per the July 17, 2026 email) constitutes an "interference" between Sam's Club and Oil is not within the four corners of the Standstill Orders. In any event, the actual words in the Orders are not sufficiently "clear and unambiguous" to impose such a broad obligation on Shell.

Next, Oil Depot points to the transcript of the hearing before Judge Azrak on November 1, 2023, to support the claim that Shell sales representative support to Oil Depot was "part of what the Court sought to protect." ECF No. 212 at 2. At that hearing, Judge Azrack asked, "don't they still have a sales rep that works with them?," and Shell's counsel responded, "Your Honor, it's a Sam's Club sales rep." *See id.* From that, Oil Depot argues that "[t]hese passages demonstrate the Court's initial understanding that the Shell sales representatives were part of the Sam's Club purchasing ecosystem." *See id*. Next, Plaintiffs' counsel told Judge Azrack later in the hearing that Shell had "conversations internally about canceling some orders to them through Sam's Club" and assured the Court "we will not do that." *See id.* Oil Depot's counsel then requested that Shell's assurance "be included in whatever the modified order be," Judge Azrack agreed, stating that "I think that it will be part of the modification." *See id.* From this colloquy, Oil Depot contends that "this exchange shows the Court intended to protect Oil Depot's purchasing relationship from any form of Shell interference." *See id.*

But the random passages Oil Depot relies upon simply do not support such an expansive reading of Shell's targeted obligations in the Standstill Orders. There is nothing in the transcript that clearly addresses Shell's direct communications with Oil Depot, and no one – neither Shell,

Oil Depot, nor Judge Azrack – said at the hearing that the order would require Oil Depot's continued access to a Shell representative. Even if the transcript could be read as broadly Oil Depot suggests, such a fleeting discussion that is not reduced to the text of the order cannot supply the necessary clarity required for a contempt finding. *See Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 516 (E.D.N.Y. 2004) (in which the court denied a finding of contempt only as to obligations that appeared in a verbal colloquy, but were not reduced to a written order). Furthermore, Oil Depot's effort to distinguish the *Indep. Living Aids, Inc*. case as obligations concerning actions "never reduced to a written order" (ECF No. 212 at 5) does not help it, because the obligation Oil Depot asserts here (that is, continued direct sales representative contact and support) appears in neither the written Orders *nor* the transcript.

Finally, the expansive relief now sought by Oil Depot reaffirms that the Orders simply do not include the broad affirmative duty it now asserts against Shell. Oil Depot seeks an order requiring Shell to "restore direct communication between Depot and Shell's designated sales representatives on the same terms that existed for ten years before the directive and on the same terms provided to Depot's competitors." ECF No. 206 at 4. It also argues that the Orders protect the "purchasing ecosystem;" that "ongoing" refers to "the 'ongoing' nature of the business;" and that Shell's directive disturbed a "status quo." ECF No. 212 at 1-3. But none of those vague obligations appear anywhere in the Orders. Oil Depot boldly states that it has "no interest in inverting the mere negative—'noninterference'—into any more affirmative duty." *Id.* Yet that is exactly what it is trying to do in the Motion by seeking an order requiring Shell to re-assign personnel to service Oil Depot and to communicate with it on a defined set of subjects. As Shell notes, such relief "relates to Oil Depot's relationship with Shell, not its ability to purchase from Sam's Club." ECF No. 218 at 4. In sum, the Court concludes that the Orders did not clearly and

unambiguously prohibit Shell from withdrawing its own discretionary direct sales contact with Oil Depot. Instead, the Standstill Orders are limited to prohibiting interference with Oil Depot's purchases from Sam's Club.

**B. Oil Depot Has Not Shown Noncompliance by Clear and Convincing Evidence**

Even if the Orders were read as Oil Depot describes, the record does not clearly and convincingly show that Shell interfered with Oil Depot's purchases from Sam's Club. First, Oil Depot's representative Jeffrey Samet admits that "Oil Depot has not been blocked from placing orders through Sam’s Club[.]" ECF No. 215 ⁋ 5. He reports that Oil Depot's "sales of Shell products are down 20-25% since July [2026],”[5] but acknowledges that "because I cannot speak with Mr. Gomez [Shell’s sales representative], I cannot confirm whether this is due to a withholding of allocation." *Id.* In response, Shell’s representative Bree Sandlin notes that "Oil Depot has continued to purchase Shell-branded products through Sam's Club” since July 2026, that Shell has not cancelled or declined to fulfill any order "because of the July 17 communications decision," that orders not delivered were unavailable "due to generally applicable supply constraints" that also affected other Sam's Club customers, and that Shell "has not changed the process by which Shell receives and fulfills Oil Depot orders." ECF No. 218 ¶¶ 4-6. Oil Depot’s claims of Shell’s “apparent” noncompliance, therefore (ECF No. 206 at 2), does not meet the clear and convincing standard.

**C. Shell's Efforts to Comply with the Orders**

Because the Orders are not unambiguous and noncompliance has not been shown, the Court only briefly addresses the third element regarding compliance. The question is whether Shell "diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina*

[5] Oil Depot’s letter portrays this sales figure as a decline in “purchases.” *See* ECF No. 212 at 2.

*Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir. 2004). The Court finds that Shell's contemporaneous communications with Oil Depot reflect its efforts to act within the Orders: the July 17 email preserved alternative channels of communications through attorneys, and the later July 20 and July 27 emails reaffirmed that the receipt and fulfillment of Sam's Club orders would continue unchanged. (ECF No. 218-2 at 3, 5-6).

While Shell acknowledges that "the parties' deteriorating litigation relationship (including Oil Depot's litigation tactics and settlement positions) was one consideration" in ending direct communications between Shell and Oil Depot (ECF No. 218 at 5; ECF No. 218-6 ¶¶ 7-9), it also correctly observes that, "[m]otive cannot create an obligation that the Orders do not contain." ECF No. 218 at 5. Therefore, the Court finds that regardless of Shell's motives, it did attempt to comply with the Standstill Orders.

## IV. CONCLUSION

For the reasons above, the undesigned declines to certify any facts to Judge Bulsara for a determination of whether Plaintiffs should be held in contempt. *See* 28 U.S.C. § 636(e)(6)(B). Accordingly, the Motion is denied.

**SO ORDERED**:

Dated: Central Islip, New York
October 21, 2026

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge